**Edna H. SOBEL, M.D., and Bella C. Clutario, M.D., on behalf of themselves and other professional faculty members employed by the Defendant, Yeshiva University, similarly situated, Plaintiffs,**

**and**

**Equal Employment Opportunity Commission, Plaintiff-Intervenor,**

**v.**

**YESHIVA UNIVERSITY, Ephraim Freidman, M.D., Chester Edelman, Jr., M.D., Emanuel Genn, Henry L. Barnett, M.D., Labe C. Scheinberg, Harold Schulman, M.D., Neal Bricker, M.D., Edward Hehre, M.D., Henry P. Lauson, M.D., and Arthur S. Abramson, M.D., Defendants.**

No. 75 Civ. 2232 (GLG).

United States District Court,
S. D. New York.

Sept. 26, 1979.

Bonnie P. Josephs and John Doar, New York City, for plaintiffs.

Equal Employment Opportunity Commission by Richard P. Theis, Washington, D. C., of counsel, for plaintiff-intervenor.

Sidney Schutz and Winer, Neuburger & Sive, New York City, by Daniel Riesel, Mark A. Chertok, Anne C. Vladeck, New York City, for defendants.

## OPINION

GOETTEL, District Judge:

In this putative class action brought by female physicians on the faculty of the Albert Einstein College of Medicine ("AECOM") complaining of sex discrimination, the defendants have moved, pursuant to Fed.R.Civ.P. 56, for summary judgment asserting that the two named plaintiffs have not proven any personal claims of discrimination and, pursuant to Fed.R.Civ.P. 12(b)(6), for dismissal of the cause of action brought under Title IX, Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, asserting that the plaintiffs have failed to state a claim upon which relief may be granted. The plaintiffs, who had previously moved to certify the class on their first amended and supplemental complaint, now move to file a second amended complaint and to certify the class pursuant to the amendment.

### *Defendants' Motion for Summary Judgment*

The plaintiffs have asserted that they, along with other female professional employees of AECOM, have been discriminated against on the basis of sex, and that as a result they have received inferior treatment with respect to salary increases, promotions, pensions and other fringe benefits and conditions of their employment. They state that, at a minimum for the purposes of this motion, questions of fact exist which preclude the granting of summary judgment.

The defendants dispute these claims. They argue with regard to the salary increases that, at least at all times subsequent to when Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, became applicable to universities (March 29, 1972), all such increases have been nondiscriminatory and based upon a standard increment. The defendants assert that as a result the two named plaintiffs have received the standard salary increases since 1972, and also claim that they have not been passed over for any promotions which they would have been eligible for or inter-

ested in. In addition the defendants state that all pension contributions are directly dependent upon a person's salary, and that such contributions are uniform for both sexes.

The plaintiffs, in turn, claim that salary increases have not been neutrally and uniformly granted in all of the AECOM departments, and note that the utilization of "out-of-guideline" increments by AECOM make the use of any such system of uniform increases somewhat meaningless. In addition, they assert that at least one of the named plaintiffs (Dr. Clutario) has had her salary set anew (upon reappointment) at a time subsequent to the effective date of Title VII, and thus that the failure to re-evaluate and compensate her at the level to which she would have been entitled had she not been subject to pre-Act discrimination constituted a new discriminatory act. As to promotions, plaintiffs assert that they have been discriminatorily granted, with male employees of AECOM obtaining promotions in a shorter period of time than similarly situated females. Finally, the plaintiffs state that the pension benefits paid by AECOM's insurance carrier are not equal since they provide for the payment of a smaller monthly annuity to the women employees than is paid to the men.[1]

In regard to Dr. Clutario's claim of salary discrimination, it has been held that evidence of a discriminatory act which occurred prior to the passage of Title VII and which has some continuing effect on the operation of neutral, legitimate post-Act policies, does not, by itself, serve to taint such legitimate policies. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Absent an allegation of new, post-Act, discrimination, as opposed to an allegation of pre-Act discrimination

which has been perpetuated by post-Act policy, no Title VII claim has been made out. Thus, since it is undisputed that Dr. Clutario has been receiving standard salary increases at all times during the post-Act period, it does not appear that she will be able to sustain a Title VII claim based upon her pre-Act, possibly discriminatory, lower salary level unless she can somehow convert this into a present discriminatory practice. The Court believes it to be highly unlikely that a routine reappointment to the faculty, absent a showing of some special circumstances,[2] would be sufficient to constitute a new discriminatory act. Nevertheless, and especially in view of the stringent standard for granting summary judgment, *see infra*, the plaintiffs must be given the opportunity to prove that such special circumstances exist.

Turning to the pension benefit claim, the plaintiffs assert that the Supreme Court's decision in *Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), is dispositive of the instant issue. In *Manhart*, it was held that the practice of the defendant, a self insurer, of requiring female employees to make larger contributions to a pension fund than did their male counterparts (in view of the greater average longevity of females) in order to receive the same retirement benefits, was violative of Title VII.

The pension plan involved in the instant action, however, is different from the plan involved in *Manhart*. The AECOM plan is funded through a private insurance company, and requires equal pension contributions from men and women. Nevertheless, problems still arise with this plan since it calls for the eventual payment of smaller monthly annuities to women employees than to similarly situated males.[3]

---

1. The total contemplated benefits would be equal in view of the greater anticipated longevity of women.

2. Such circumstances would have to show that the reappointment process actually served to disrupt the continuity of her employment.

3. Although the complaint did not focus on this aspect of the alleged pension discrimination, the Court believes that it has been adequately pleaded and made the subject of discovery so that summary disposition is inappropriate.

■ The problems which arise in regard to the pension claim are somewhat vexing. To a substantial degree this results from the difficulty in applying the legalistic rationale of *Manhart* to a pension plan which is funded through a private insurance company. As was noted in *Equal Employment Opportunity Comm'n v. Colby College*, 589 F.2d 1139, 1143 (1st Cir. 1978), "*Manhart* brought to the Court the case that presented the fewest difficulties, and the most conspicuous discrimination, if discrimination there were." The court in *Colby College, supra*, at 1144, went on to note, however, that it was "difficult to perceive a distinction [from *Manhart*] that would permit a plan whereby women make contributions equal to those of men, but receive smaller monthly payments." *See Reilly v. Robertson*, 266 Ind. 29, 360 N.E.2d 171 (1977), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977). Similarly, the defendants in the instant action will have difficulty distinguishing their pension plan from the rationale of *Manhart.* Nonetheless, there are serious problems which are present in the instant factual situation. One of the more difficult considerations arises as to the defendants' ability to alter or modify the existing plan, or to compel the private insurer (which has not been named as a party to this action)[4] to distribute pension payments in a manner different from that found to be actuarially sound under the existing life expectancy tables.[5] Thus, although the Court sees difficulties with the AECOM pension plan, we believe that the complex problem of applying *Man-hart* to a plan funded through a private insurance company in a manner which is both consistent with that decision, and yet can be realistically carried out by the insurance industry, cannot be decided on a motion for summary judgment (either brought by the plaintiffs or the defendants).

■ Turning to the remaining claims relating to alleged discrimination in salary, promotion, and fringe benefits (such as allocation of research and office space, and secretarial and fellowship assistance), the Court does not believe that either of the named plaintiffs has, as to this point, made a particularly persuasive showing of individual discrimination. There is, however, a strong policy in this circuit against the granting of summary judgment. *See, e. g., Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975). Summary judgment can only be granted when there are no material questions of fact which remain unresolved, Fed.R.Civ.P. 56, and only after all ambiguities and doubts have been resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *FLLI Moretti Cereali S.p.A. v. Continental Grain Co.*, 563 F.2d 563 (2d Cir. 1977); *American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272 (2d Cir. 1967). Summary judgment is a "harsh remedy," *FLLI Moretti Cereali S.p.A. v. Continental Grain Co., supra*, to be granted only in extremely rare instances. *See S. E. C. v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978).[6]

---

4. The Court does not agree with the defendants' contention that this claim must be dismissed for failure to join the insurance company, allegedly an indispensable party. Although the insurance company is the actual carrier to whom the insured employee looks to for payment, AECOM is an active participant in the pension process "without which 'the challenged program could not operate'." *Equal Employment Comm'n v. Colby College*, 589 F.2d at 1141, quoting from *Spirt v. TIAA*, 416 F.Supp. 1019, 1021–22 (S.D.N.Y.1976). Accordingly, AECOM is an adequate party against whom this claim may be maintained.

5. The Court, in the absence of evidence, expresses no opinion as to whether a combination insurance and annuity plan, as suggested in the concurring opinion to *Colby College*, 589 F.2d at 1146, could be structured in such a way so as to provide benefits of equal value to both sexes (since the cost of life insurance is greater for men), and thus be permissible under *Manhart.* However, it is certainly a possibility to be considered.

6. In *S. E. C. v. Research Automation Corp., supra*, the Court of Appeals affirmed the district court's granting of summary judgment based upon a finding that the adverse party neither filed a statement of "material facts as to which it is contended that there exists a genuine issue to be tried," as required by Rule 9(g) of the Southern District of New York, nor

■ Applying this standard, the Court finds that questions of fact exist which preclude the granting of summary judgment. In this regard, the Court believes it to be difficult to evaluate the intent, and effect, of faculty appointment and promotional decisions on an individual basis, absent the submission of extensive comparative material. *See Sweeney v. Board of Trustees of Keene State College,* 569 F.2d 169 (1st Cir. 1978); *Faro v. New York University,* 502 F.2d 1229 (2d Cir. 1974) (necessity in job discrimination suit that there be a comparison made with other employees, taking into account experience, skill, and purpose for hiring). In addition, in the context of the instant action as a class suit, it may be that proof of existing discriminatory practices against the class will serve to strengthen the individual claims made by the named plaintiffs. In any event, as to salary, evidence as to the use of out-of-guideline increments could prove the existence of favoritism towards the male employees, a circumstance which would make the fact that these female employees may have received standard pay increases immaterial.

Accordingly, the defendants' motion for summary judgment is denied.

### Defendants' Motion to Dismiss the Title IX Claim

The defendants have also moved to dismiss the plaintiffs' claim which is based upon Title IX, Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.,* asserting that no implied private right of action exists under which these plaintiffs may maintain their suit for sex discrimination.[7]

The question of whether a private right of action should be implied under Title IX was recently reached by the Supreme Court in *Cannon v. University of Chicago,* —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560

(1979). There it was held that such right of action existed for the benefit of beneficiaries, such as students, of any educational program receiving federal financial assistance. The plaintiffs now assert that they, as employees of an educational institution receiving federal funds, come within the scope of the *Cannon* decision, and thus may maintain their claim.

■ Contrary to the plaintiffs' contention, the issue of whether employees of an educational institution come within the scope of the right of action created in *Cannon* was not reached by the Supreme Court. Rather, this Court in deciding this question must look to the standards set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether the right of action should be extended to cover these plaintiffs. Upon close examination, the Court concludes that it should not so extend.

■ Under the *Cort* guidelines the Court must first determine whether the plaintiffs are " 'one of the class for whose *especial* benefit the statute was enacted.' " 422 U.S. at 78, 95 S.Ct. at 2088. In answering this question, it was noted in *Cannon,* —— U.S. at ——, 99 S.Ct. 1946, the Court should look to the language of the statute itself. Such an examination of the plain language of the instant statute, however, indicates no intent to extend its commands so as to include employees of an educational institution in addition to students. This conclusion has been found to be supported by the legislative history of the statute, and to be consistent with its purpose and with the overall purpose and scheme of federal anti-discrimination laws. *Romeo Community Schools v. H. E. W.,* 601 F.2d 581 (6th Cir. 1979); *Junior College Dist. of St. Louis v. Califano,* 597 F.2d 119 (8th Cir. 1979); *Islesboro School Comm. v. Califano,* 593

---

contradicted with specificity any of the charges against him.

**7.** In their initial papers the defendants maintained that no private right of action existed under Title IX. In view of the Supreme Court's decision in *Cannon v. University of Chicago,*

—— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), they now concede that such right of action should be implied. They continue to assert, however, that this right of action was not implied for the benefit of, and thus no suit may be brought by, these plaintiffs.

F.2d 424 (1st Cir. 1979). Thus, although the *Cannon* ruling has established that a private right of action may be implied under Title IX for the benefit of a certain class of plaintiffs, these plaintiffs, who are protected under the terms of Title VII, do not fall within that class and may not maintain this cause of action.

Accordingly, the defendants' motion to dismiss the claim based upon Title IX is granted.

### Motion to Amend

In their original complaint, which was filed prior to the Equal Employment Opportunity Commission having had an opportunity to investigate the complaint or issue a "right to sue" letter,[8] the plaintiffs, on behalf of themselves and other female employees similarly situated, alleged that the pediatrics department of AECOM engaged in a practice of gender based discrimination. Subsequently, in response to a voluminous motion to dismiss the original complaint, the plaintiffs filed an amended complaint which enlarged the class so as to include all female physicians employed by AECOM, regardless of department, and to add as additional defendants the chairman of certain of these various departments.

The plaintiffs now seek to file a second amended and supplemental complaint. They propose that the class be enlarged so as to consist of all female employees who were employed anytime after May, 1969 by AECOM, or were faculty members at its "West Campus."[9] The plaintiffs also seek to include all females who might in the future be employed as members of AECOM's professional staff, as well as all retired female faculty members. In addition, the plaintiff proposes to add professional employees other than physicians.

In order to train its students AECOM maintains both its own hospital and campus. It also sends its students to various other area hospitals in order to receive certain types of clinical training. For example, clinical psychiatric training is received at Bronx State Psychiatric Hospital, and other training at Bronx Lebanon Hospital. AECOM apparently maintains an especially close relationship with Montefiore Hospital. All physician members of the Montefiore staff, and physicians at the other affiliated hospitals who take part in these clinical programs, are, we are told, automatically considered part of the faculty of AECOM.[10] These physicians, who are classified as the West Campus faculty, however, are not paid by AECOM, nor do they receive anything from the College other than their faculty designations.

Under the terms of Fed.R.Civ.P. 15(a) leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). This does not mean, however, that such amendment should be granted under all circumstances. Where there has been "undue delay, bad faith, or dilatory motive," *Foman v. Davis, supra*, at 182, 83 S.Ct. at 230, or where permitting amendment would have "required extensive preparation and consumed voluminous amounts of trial time to the detriment of a speedy resolution of the case," *Izaak Walton League of America v. St. Clair*, 497 F.2d 849, 854 (9th Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Data Digests, Inc. v. Standard & Poor's Corp.*, 57 F.R.D. 42 (S.D. N.Y.1972), amendment should be denied.

---

**8.** The statement in this Court's opinion of May 31, 1977, that the "right to sue" letter preceded the commencement of the litigation, is erroneous. As noted in this Court's June 30, 1976 opinion, the plaintiffs initially sued under the Civil Rights Act and the Equal Pay Act, and only subsequently, after the "right to sue" letter had been issued, did they amend their complaint so as to add a Title VII claim.

**9.** The "West Campus" faculty consists of individuals who teach AECOM students on the premises of hospitals which are affiliated with, but not operated by AECOM. For a fuller discussion, *see infra*.

**10.** It is more likely that the Montefiore staff who are automatically professors are the full time physicians employed by the hospital and not the larger number of physicians with privileges at the hospital.

The granting or denial of leave to amend is within the discretion of the district court, and should be determined so as "to secure the just, speedy, and inexpensive determination of every action." *Foman v. Davis, supra,* at 182, 83 S.Ct. at 230, quoting from Fed.R.Civ.P. 1.

■ Contrary to the plaintiffs' assertions, enlargement of the class as proposed *would* serve to alter and expand the issues to be tried. For instance, while physicians at the "West Campus" are AECOM faculty to the extent of title and promotion (and possibly certain other related matters), their relationship to the College is far different from that of the "East Campus," paid (by AECOM) staff. As a result, different issues and questions as to the extent, intent, and form of the alleged discrimination would inevitably arise.[11] Similarly, the inclusion of staff members possessing degrees other than "M.D.," given the nature of their relationship to the College, would lead to still other, different issues. Were the class to be expanded so as to include all such individuals "typicality," as required by Fed.R.Civ.P. 23(a), would be lacking. *See, e. g., Wells v. General Electric Co.,* 78 F.R.D. 433, 436 (E.D.Pa.1978).

■ Turning to the request to include future employees of AECOM (an extremely nebulous class), the Court can find no necessity for inclusion. Unlike cases where it has been found that failure to include such persons within a class could cause the action to become moot before it is determined, or shortly thereafter (for example, prisoners held in a pretrial detention center), failure to include future employees in the instant class will not have this detrimental effect. Given the number, which, even excluding retirees and "West Campus" faculty, exceeds two hundred, many tenured, the likelihood that some members of the present class will continue to be on the AECOM faculty is extremely high. Accordingly, the class will not be expanded to include such individuals. *See Timpano v. East Ramapo Central School District,* 20 F.E.P. 652 (S.D. N.Y.1979).

This action has been pending for an undue period of time.[12] The conduct of the discovery process has been acrimonious and protracted, with excessive delay being the rule of this action rather than the exception. (In fact, the plaintiffs were directed more than a year ago to move to amend the complaint promptly if they wished to add "West Campus" employees. They failed to do so.) Yet there still remains no indication that the case will be ready for trial in the near future. The Court believes that there would be little benefit derived from so expanding the class at this late date, while at the same time it is likely that there would be significant potential detriment if leave to amend is granted. The expansion of the class as requested would serve to delay the trial of an action which has already been delayed too long. Consequently, the motion to amend the complaint must be denied.

*Class Certification*

An initial consideration for the Court in deciding this motion for class certification is the question of the appropriate statute of limitations to be applied so as to determine membership in the instant class.

The plaintiffs have alleged, in addition to their claims arising under Title VII (which has a short statute of limitations), claims which arise under the Fifth and Fourteenth Amendments to the Constitution, and which, they assert, affords them a right of action for damages under which they can maintain this suit. *Davis v. Passman,* —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Since no federal statute of limitations exists for the assertion of a direct

---

11. As to whether the "West Campus" faculty could qualify as a separate sub-class to the litigation, *see infra.* It appears that there may be a distinction between those "West Campus" doctors who go to AECOM to teach and those who are merely available at their own institutions.

12. The original complaint in this action was filed four and a third years ago. It is a year older than the next oldest case on the Court's dockets, and that case is ready for trial.

constitutional claim, *see Regan v. Sullivan,* 557 F.2d 300 (2d Cir. 1977), they claim that the Court must look to the applicable state limitation which they contend, in the instant situation, would be the New York six-year limitation for an "action for which no limitation is specifically prescribed by law." N.Y.C.P.L.R. § 213(1) (McKinney's, 1972). Accordingly, they argue that membership in the putative class should be determined on the basis of the six-year limitation (and not the Title VII limitation) and, consequently, should consist of all women on the AECOM faculty from May, 1969 to May, 1975 (the date the complaint was filed) who could have sued the College individually for discrimination.

■■■■ The Court finds no merit to this position. Contrary to their assertion, implication of a right of action on behalf of the plaintiffs under the Fifth or Fourteenth Amendments would be inappropriate in the instant action for, unlike the situation in *Davis v. Passman, supra,* where it was held that such right of action could be implied on behalf of a congressional employee who, due to exclusion from coverage of Title VII,[13] had no other remedy available, these plaintiffs have brought suit, and have a remedy available, under Title VII, a statute which was enacted specifically for this purpose. Were this Court to permit the plaintiffs to maintain their claims through implication of right of action under the Constitu-

tion, rather than by acting under Title VII, it would serve to allow them to circumvent the complex procedural and remedial scheme established by Congress to rectify alleged discrimination, and would tend to undermine the effectiveness of Title VII. *Great American Federal Savings & Loan Ass'n v. Novotny,* —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Title VII provides an effective basis for relief in this action and, accordingly, it is pursuant to its procedures and time limitations that membership in the instant class will be determined.[14]

■■■■ In defining the scope of the putative class it is not necessary that every potential class member have individually met Title VII's requirement of filing charges with the EEOC. Rather, this requirement is satisfied by the class representatives' filing of such a complaint on behalf of all those individuals who *could have filed* complaints themselves with the EEOC at that time. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir. 1975). Under the terms of 42 U.S.C. § 2000e–5(e), a charge raised pursuant to Title VII must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." Thus the statute of limitations to be applied in this action is the short period of one hundred and eighty days.[15] *See, e. g., Wetzel v.*

**13.** The Court in *Davis* noted that there was no explicit congressional declaration that persons similarly situated to the plaintiff should be precluded from recovering from those who have unlawfully acted against them, and went on to state that "[t]here is no evidence, however, that Congress meant § 717 [the section which extended the coverage of Title VII so as to protect federal employees but failed to extend that coverage to include congressional employees] to foreclose alternative remedies available to those not covered by the statute." —— U.S. at ——, 99 S.Ct. at 2278.

**14.** The claims asserted by the plaintiffs under various provisions of the Civil Rights Act are subject to a similar analysis as to the applicable statute of limitations. Title VII provides for specific and comprehensive time limitations to be followed in actions which allege sex discrimination. It would be inappropriate, and contrary to congressional intent, for the Court to

allow these requirements to be circumvented through the allegation of discrimination claims which, it is asserted, arise under different provisions of the law, but which are based upon the same conduct as that which serves as the basis for the Title VII claims. *Great American Federal Savings & Loan Ass'n v. Novotny, supra.* Accordingly, the Title VII statute of limitations shall be held to apply for the purpose of determining membership in the putative class.

**15.** Although the statute of limitations in Title VII actions is only one hundred and eighty days, a court may, upon a finding that the defendant engaged in an intentional practice of employment discrimination, impose back pay liability for a period of up to two years prior to the filing of the complaint. 42 U.S.C. § 2000e–5(g). *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Patterson v. American Tobacco Co.,* 535 F.2d 257 (4th Cir. 1976).

*Liberty Mutual Insurance Co., supra; Carter v. Newsday, Inc.,* 76 F.R.D. 9 (E.D.N.Y. 1976).[16] Accordingly, it is only those individuals who are within the scope of the defined class and who were employed by AECOM during the period one hundred and eighty days before the EEOC complaint was filed, and thereafter, who are includable within the class.[17]

Turning to the requirements for maintenance of a class suit, the Court believes that, even taking the class limited as described, the class is still so numerous as to make joinder impossible. Fed.R.Civ.P. 23(a)(1). *See Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515 (S.D.N.Y.1973). Similarly, the Court finds there to be questions of law and fact common to the class designated in the first amended complaint. Fed. R.Civ.P. 23(a)(2). The plaintiffs have alleged a College-wide practice of discrimination at AECOM which, it is asserted, inures to the detriment of all women professional employees. Such an allegation, if proven, provides a sufficient degree of commonality to satisfy the requirement. *See, e. g., Senter v. General Motors Corp.,* 532 F.2d 511, 524 (6th Cir. 1976); *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968); *Carter v. Newsday, Inc., supra.* The defendants' contention, relying upon *Sanday v. Carnegie-Mellon University,* 17 F.E.P. 562 (W.D.Pa.1976), that commonality is lacking since decision-making at AECOM is decentralized, and thus varies from department to department, is premature since it raises a question of fact which cannot be resolved at this time. Accordingly, the second requirement for class certification has been met.

The Court also finds that the requirements of Fed.R.Civ.P. 23(a)(3) & (4) have been met. The plaintiffs have alleged that an overall pattern of discrimination at AECOM exists which is to their (and to the classes') detriment. The interests of the named plaintiffs in contesting such an overall scheme are typical of the interests of the class. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d at 247–248. The interests of the named plaintiffs are coextensive, and not antagonistic to the interests of the class. In addition, the plaintiffs are represented by diligent and capable counsel who are more than able to adequately represent the interests of the class.

█ Accordingly, with one limited exception, the Court finds that the appropriate class in this action is that defined in the first amended complaint, with the time parameters for determining membership to be one hundred and eighty days prior to the filing of the EEOC complaint. So defined, the Court holds that this class satisfies the requirements of Fed.R.Civ.P. 23 and should therefore be duly certified.

The one exception mentioned relates to the promotion of persons on the "West Campus" faculty. As indicated in the discussion of the motion to amend the complaint, the Court is unwilling to consider these individuals as members of the general class. To the extent, however, that such "West Campus" faculty members are afforded promotions and titles by AECOM (although are not otherwise employed by them) they may be included as a separate limited sub-class relating to such promotion.[18] Any discovery with respect to this sub-class should be limited strictly to the

**16.** Where the named plaintiff has initially filed a complaint with a state or local agency of appropriate authority, the statute of limitations then applicable would be three hundred days. 42 U.S.C. § 2000e–5(e).

**17.** Since the filing of the EEOC complaint served to toll the statute of limitations for all potential class members relying on the same discriminatory acts or policy as the basis for their rights, *United States v. Georgia Power Co.,* 474 F.2d 906, 925 (5th Cir. 1973), eligibility of individuals included within the scope of the first amended complaint for class membership is to be determined on the same period as that applicable for those named in the original complaint.

**18.** In this regard, the plaintiffs have contended that their original complaint had included all women physicians listed as faculty members, without distinguishing those who were actually employees of AECOM from those who were adjunct teachers and those who were on the staffs of other hospitals.

factors affecting their promotions (or lack thereof).[19]

The parties will settle an order accordingly.

SO ORDERED.

---

19. As noted in footnote 11, *supra*, there may be need to distinguish those "West Campus" faculty who teach on the AECOM premises, from those who do not.