Edna H. SOBEL, M.D., and Bella C. Clutario, M.D., on behalf of themselves and other professional faculty members employed by the Defendant, Yeshiva University, similarly situated, Plaintiffs,

and

Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

YESHIVA UNIVERSITY, Defendant.

No. 75 Civ. 2232 (GLG).

United States District Court,
S.D. New York.

Oct. 9, 1985.

Specter & Buchwach, P.C., Howard A. Specter, Michael D. Buchwach, Pittsburgh (Berger, Kapetan, Malakoff & Meyers, P.C. by Michael P. Malakoff, Pittsburgh, of counsel), for plaintiffs and the class.

Bonnie P. Josephs, New York City, local counsel for plaintiffs and EEOC.

E.E.O.C., Johnny J. Butler, Acting Gen. Counsel, James N. Finney, Director Systemic Program, Leroy T. Jenkins, Jr., Director, LEC, Ronald L. Oleson, Supervisory Trial Atty., Robert B. Harwin, Trial Atty., Washington, D.C., for plaintiff-intervenor.

Sidney Schutz and Sive, Paget & Riesel, P.C., New York City (Daniel Riesel, Mark A. Chertok, Lawrence R. Sandak, Lawrence A. Goldberg, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

This seemingly interminable Title VII class action having finally been concluded, the Court is now confronted with motions by both the plaintiffs and the defendant for attorneys' fees. For the reasons stated below, we conclude that neither party should be awarded attorneys' fees.

*Background*

This action was filed May 9, 1975, by two female physicians employed at the Albert

Einstein College of Medicine ("AECOM").[1] They asserted that they, and all similarly situated women employees of AECOM, had been discriminated against on the basis of sex, and thereby received inferior treatment with respect to salary increases, promotions, pensions, and other fringe benefits. The plaintiffs' original pension claim was that, since the salaries of the plaintiffs were lower, the contributions made by the defendant employer based upon those salaries, and the benefits to be received, were, accordingly, lower. On May 31, 1977, this Court allowed the Equal Employment Opportunity Commission ("EEOC") to intervene. On September 26, 1979, we certified the plaintiff class.

In 1979, the defendant moved for summary judgment, asserting that the named plaintiffs had failed to prove any personal claims of discrimination. In opposing that motion, the plaintiffs varied their original pension claim, citing *Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). In *Manhart,* the Supreme Court had recently held that requiring female employees to make larger contributions to a pension fund than did their male counterparts (in view of the greater average longevity of females) in order to receive the same retirement benefits, violated Title VII. Relying on *Manhart,* the plaintiffs asserted that the use of sex-segregated mortality tables to calculate the amount of pension benefits paid on retirement was discriminatory. Although different from the plaintiffs' original pension claim, this Court allowed the revised claim to stand,

*Sobel v. Yeshiva University,* 477 F.Supp. 1161, 1165 n. 3 (S.D.N.Y.1979), and denied the defendant's motion, noting that "questions of fact exist which preclude the granting of summary judgment." *Id.* at 1167.

The parties completed discovery and prepared extensive statistical reports regarding the alleged discrimination. On June 24, 1984, after a three-week bench trial, this Court issued its findings. *Sobel v. Yeshiva University,* 566 F.Supp. 1166. The defendant prevailed on all but the pension claim, on which we reserved decision because of the developing case law following *Manhart, supra. Id.* at 1192. Two circuit court decisions were then on appeal to the Supreme Court. *See Spirt v. Teachers Insurance & Annuity Association,* 691 F.2d 1054 (2d Cir.), *petition for cert. denied,* 459 U.S. 1013, 103 S.Ct. 371, 74 L.Ed.2d 506 (1982); *Norris v. Arizona Governing Committee for Tax Deferred Annuity,* 671 F.2d 330 (9th Cir.), *cert. granted,* 459 U.S. 904, 103 S.Ct. 205, 74 L.Ed.2d 164 (1982).[2] These cases indicated that an employer's use of sex-segregated mortality tables in an employee pension plan was discriminatory.[3]

The parties attempted to agree upon a remedy for the pension claim but were unable to do so until the eve of a scheduled trial on that issue. Devising a remedy for the discrimination in the AECOM plan was complicated by the fact that it was administered by a private insurer, not a party to the litigation. Ultimately, the parties agreed on changes in the pension plan acceptable to the insurer.[4] All claims in suit

---

**1.** AECOM is the medical school division of defendant Yeshiva University.

**2.** The Supreme Court eventually affirmed *Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), while vacating and remanding *Spirt* for reconsideration in light of *Norris.*

**3.** In *Manhart,* the discrimination stemmed from requiring greater pension contributions by women to receive the same retirement benefits as men. The AECOM plan required equal contributions from both men and women, but paid smaller monthly annuities to women based on the statistical expectation that women will live

longer. Another distinction between the pension plan in *Manhart* and the AECOM plan is that the latter was administered by a private insurance company rather than a governmental entity, as in *Manhart* (and *Norris* ).

**4.** No objections to the changes in the pension plan were received from the plaintiff class. However, a number of retired male professors argued that the changes should be retroactive to afford them the opportunity to take advantage of a new option offered. (Their objections were not considered since they were not a party to this litigation.)

having been resolved, each party now moves for its attorney's fees.

*The Motions for Attorneys' Fees*

The plaintiffs move for an award of attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k) (1982), which provides that "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fees as part of the costs." Both the plaintiffs' original counsel and successor counsel have filed motions for their fees. The parties have submitted voluminous papers in support of, and in opposition to, each application. The flood of litigation has not, however, stopped there. The defendant has filed a similar motion, claiming that it, rather than the plaintiffs, is the prevailing party and should be awarded an attorney's fee and costs. Again, the moving and opposition papers are voluminous.[5] Since both parties claim to be the "prevailing party," this Court is faced with a perplexing decision. Should the plaintiffs, having prevailed through settlement on one of their claims (albeit a claim not originally asserted but successful because the case law changed during the long pendency of this action), be awarded an attorney's fee? If so, should an award be made to plaintiffs' original or successor counsel, or both, and in what amount? On the other hand, should the defendant, who prevailed on all other claims in this action, be awarded an attorney's fee?

### 1. *The Motions by the Plaintiffs' Counsel*

Plaintiffs' original counsel, Bonnie Josephs, seeks $50,000, pursuant to 42 U.S.C. § 2000e–5(k), for her services in litigating the pension discrimination issue on which the plaintiffs ultimately prevailed. She first asserted this claim in opposing the defendant's motion for summary judgment. The Court deferred ruling on the pension claim while *Norris, supra,* was pending

before the Supreme Court. The *Norris* decision, *see supra* note 2, made clear the need for a change in the pension tables, and the remedy for the pension claim was ultimately settled. Josephs asserts that she conducted discovery that highlighted the disparity between pension benefits paid by the defendant to the plaintiffs and those paid to similarly situated males. Although she did not represent the plaintiffs at trial, she participated in the settlement of the pension claim.[6]

Plaintiffs' successor counsel, Specter & Buchwach ("S & B") seek an award of $35,000 for attorneys' fees. They assert that, since the plaintiffs prevailed on a significant aspect of their claims, S & B is entitled to a reasonable attorney's fee award. They seek compensation for time spent trying the pension issue, preparing that issue for trial, and settling the damages for that claim. Both Josephs and S & B also seek compensation for time spent preparing these motions for attorneys' fees.

The defendant opposes both applications on a number of grounds. It argues that the plaintiffs have not met their burden of establishing entitlement to an award. Since the plaintiffs may not receive an award for non-prevailing claims, the defendant urges the Court to deny the plaintiffs' applications because their counsels' records do not clearly distinguish between time spent on successful and unsuccessful claims. The defendant further asserts that the plaintiffs are entitled to no award of attorneys' fees because special circumstances surrounding the pension issue preclude such an award.

### 2. *The Defendant's Motion*

The defendant seeks an attorney's fee award of $1,225,042, pursuant to 42 U.S.C. § 2000e–5(k), and an award for costs and

---

5. The Supreme Court has said that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Unfortunately, the parties to this action have not heeded this pronouncement.

6. Josephs removed herself as plaintiffs' counsel prior to trial, but remained as local counsel for plaintiffs' successor counsel, Specter & Buchwach, and for plaintiff-intervenor, EEOC.

experts' fees totaling an additional sum of almost $600,000, pursuant to Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920. The defendant asserts that it is the prevailing party, despite the ultimate settlement of the pension claim in the plaintiffs' favor.[7] It asserts that the plaintiffs' claims were groundless from their inception, and that the plaintiffs acted in bad faith in continuing this litigation after it became clear their claims were meritless. Alternatively, the defendant claims it is entitled to an award pursuant to Fed.R.Civ.P. 16 and 37 as a sanction for the vexatious behavior of the plaintiffs in this action. The defendant asserts that the plaintiffs and intervenor EEOC repeatedly violated discovery and other pretrial orders and forced the defendant to prepare defenses for trial on numerous frivolous claims which the plaintiffs withdrew at the last minute.

The plaintiffs contend that they acted reasonably in filing and pursuing their discrimination claims. They state that the EEOC's intervention confirmed the reasonableness of that belief as did the Court's favorable rulings on their class certification motion and the defendant's motions to dismiss and for summary judgment. They assert that the defendant is not entitled to an award of its fees and costs merely because the plaintiffs did not ultimately prevail on all their claims.

*Standards for Awarding Attorneys' Fees*

 Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1982), permits a district court, in its discretion, to award a reasonable attorney's fee to the prevailing party in federal civil rights actions. Plaintiffs who bring suits under the Civil Rights Act are considered private attorneys general, acting to advance public interests. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). A prevailing plaintiff vindicates federal law and policy and any award

made is against a violator of federal law. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). Therefore, the standard for awarding fees to prevailing plaintiffs is very generous. A successful civil rights plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park, supra*, 390 U.S. at 402, 88 S.Ct. at 966; *see Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir.1976). Civil rights plaintiffs need not prevail on every issue to be considered the prevailing party. Rather, they need only " 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978); *Plummer v. Chemical Bank*, 592 F.Supp. 1168, 1170 (S.D.N.Y.1984).

 Section 706(k) speaks not of a prevailing *plaintiff*, but rather of a prevailing *party*. Thus, it is also possible for a prevailing defendant to receive an attorney's fee award. However, the convincing rationale for awarding fees to prevailing plaintiffs does not apply to prevailing defendants. *Christiansburg, supra*, 434 U.S. at 418–19, 98 S.Ct. at 698–99. The burden upon a prevailing defendant to justify an award of fees is, therefore, significantly greater than that on a prevailing plaintiff. Yet, a prevailing defendant need not go so far as to prove that the plaintiff brought the suit in bad faith. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700.[8]

---

7. The defendant has not sought any fees or expenses associated with the plaintiffs' prevailing pension claim.

8. The Supreme Court went on to note that

assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforce-

*Application of Standard to Instant Motions*

The threshold question is who is the prevailing party. Although the defendant prevailed at trial, the final settlement of the severed pension issue produced substantial benefits for the plaintiff class. However, the plaintiff's success was due primarily to a fortuitous change in the case law years after the action was commenced. It is thus questionable whether either party can truly be deemed the "prevailing party." Nevertheless, we believe that, even accepting each party's claim to the status of partially prevailing party, under the applicable standards, neither is entitled to an award of attorneys' fees.

### 1. *The Defendant's Claim*

■ Regardless of the defendant's success on those claims decided at trial, the final settlement of the severed pension claim substantially benefitted the plaintiff class. At best, the defendant is a partially prevailing party. The defendant has not cited, nor has this Court found, any cases awarding fees to a partially prevailing civil rights defendant. In view of the strong public policy favoring civil rights plaintiffs, we do not believe it appropriate to grant fees to a partially prevailing defendant.[9]

■ Even if a defendant has prevailed in every respect, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg, su-*

pra, 434 U.S. at 422, 98 S.Ct. at 700. It does not follow that, "because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* Although the trial evidence ultimately showed no pay discrimination by the defendant after 1972 (when Title VII became applicable to universities), the class representatives (who had been employed prior to 1972) earnestly believed they had been, and were being, underpaid. In reviewing the long history of this case, we cannot conclude that the plaintiffs' claims were "frivolous, unreasonable, or groundless." Nor can it be said that the plaintiffs continued to litigate claims that became meritless. In fact, the plaintiffs dropped several of their claims prior to trial when discovery did not substantiate them. The defendant has not met the *Christiansburg* standard and its motion for an award of fees must be denied.[10]

■ The defendant alternatively requests an award of fees and costs pursuant to Fed.R.Civ.P. 16 and 37 as sanctions against the plaintiffs' allegedly vexatious conduct. This application is also denied. Both parties were equally responsible for the long delays and protracted battles over discovery that marred this litigation.[11]

### 2. *The Plaintiffs' Claims*

■ Although the plaintiffs failed at trial to prove their salary and promotion discrimination claims, the pension discrimination claim was ultimately settled in their favor. They did, therefore, partially prevail and may be awarded an attorney's fee.

---

ment of the provisions of Title VII. Hence, a *plaintiff should not be assessed his opponent's* attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.
*Christiansburg, supra,* 434 U.S. at 422, 98 S.Ct. at 700.

9. When each party has prevailed on some claim or defense, the district court has broad discretion in taxing costs. *Johnson v. Nordstrom-Larpenteur Agency, Inc.,* 623 F.2d 1279, 1282 (8th Cir.1980). Since we conclude that no fee award will be made to the defendant, its application

for costs pursuant to Fed.R.Civ.P. 54(d) is also denied.

10. Our decision to deny the defendant's motion makes it unnecessary to consider any apportionment as between the plaintiffs and the EEOC, or whether a different standard exists for assessing fees and costs against the EEOC as an intervenor.

11. The defendant received a $5,000 award in 1980 because of the plaintiffs' and the EEOC's conduct in delaying discovery. For the defendant to seek additional sanctions at this late date is inappropriate.

*See Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. at 1939. The district court is given great discretion in granting such an award. However, "the court's discretion to *deny* a fee award to a prevailing plaintiff is narrow. Absent 'special circumstances,' fees should be awarded." *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 68, 100 S.Ct. 2024, 2033, 64 L.Ed.2d 723 (1980) (emphasis added) (citing *Newman v. Piggie Park, supra,* 390 U.S. at 402, 88 S.Ct. at 966; *Christiansberg, supra,* 434 U.S. at 416–17, 98 S.Ct. at 697–98). This Court finds that special circumstances warrant denial of both Ms. Josephs' and S & B's applications for attorney's fees.

The plaintiffs did not initially raise the pension issue on which they ultimately prevailed. They raised this claim only after the Supreme Court held in *Manhart* that pension benefits based on sex-segregated mortality tables were discriminatory. Essentially, the plaintiffs stumbled upon a change in the law that supported their revised pension discrimination claims. Ms. Josephs asserts that the plaintiffs' original discrimination claims encompassed an objection to the use of gender-based mortality tables in determining pension benefits. She even annexes a letter from a faculty women's rights committee dated November 15, 1974, noting this claim. Josephs' Reply Affidavit, Exhibit E. Unfortunately, this assertion does little to justify awarding her attorney's fees. If the plaintiffs intended to assert a claim of discrimination based on the use of sex-segregated mortality tables in calculating pension benefits, they should have raised it in their complaint, not four years later in opposing a motion for summary judgment.[12]

The plaintiffs' later counsel, S & B, was even more of a bystander in the pension issue. The new pension claim was raised, following *Manhart,* before S & B came into this action. Several cases involving the application of *Manhart* had already been decided by circuit courts and were awaiting review by the Supreme Court. *See supra* p. 841. These plaintiffs had merely to await the resolution of those cases.

When *Manhart* revealed the problem of discrimination based on sex-segregated mortality tables in determining pensions, the defendant made substantial efforts to reach a settlement with plaintiffs on their pension claim.[13] The plaintiffs dragged out the negotiations and did little to facilitate settlement. In light of the fortuitous nature of the plaintiffs' successful pension claim, the enormous legal fees of the defendant in successfully defending all other claims, and the Court's conclusion that the defendant's counsel should not be reimbursed, it is our view that "special circumstances would render ... an award [to plaintiffs] unjust." *Newman v. Piggie Park, supra,* 390 U.S. at 402, 88 S.Ct. at 966.

*Conclusion*

The motions of plaintiffs' counsel and defendant's counsel for an award of attorney's fees are denied. In view of this decision, each party shall bear its own expenses for these motions.

SO ORDERED.

---

**12.** Procedually, this was improper; a motion to amend the complaint would have been appropriate. However, this Court believed that the general allegations of discrimination as to pension were sufficiently "pleaded and made the subject of discovery so that summary disposition [wa]s inappropriate." *Sobel v. Yeshiva University, supra,* 477 F.Supp. 1161, 1165 n. 3 (S.D. N.Y.1979).

**13.** It must be noted that defendant's position on this issue was complicated by the fact that the AECOM pension plan was administered not by the defendant, but by a private insurance company. Still, the defendant did what it could to get its insurer to agree to change the pension program and ultimately achieved its goal.