Sandy L. HENDERSON, et al., Plaintiffs,

v.

The STATE OF OREGON, By and Through the BUREAU OF LABOR, et al., Defendants.

Civ. No. 74–538.

United States District Court, D. Oregon.

Dec. 10, 1975.

Carol A. Hewitt, Lindsay, Nahstoll, Hart, Dafoe & Krause, Portland, Or., for plaintiffs.

Lee Johnson, Atty. Gen., James W. Durham, Deputy Atty. Gen., William F. Hoelscher, Asst. Atty. Gen., Salem, Or., for defendants.

## OPINION

SOLOMON, District Judge:

The principal issue in this case is whether the State of Oregon may continue to use two sets of life expectancy tables, one for men and another for women, in calculating "refund annuity" benefits for retired State employees.

Plaintiff Sandy Henderson works for the State.[1] The State's life expectancy tables show that its women employees as

1. So do her three co-plaintiffs. They range in age from 25 to 54.

a class live longer than men employees. The State therefore sets monthly refund annuity payments for women lower than for men. Henderson will receive lower monthly benefits when she retires than she would if she were a man. She says that the State's tables discriminate on the basis of sex in the terms and conditions of her employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

Henderson seeks a declaratory judgment to require the State to merge the two tables into one, "unisex" table. She also seeks an injunction and counsel fees.

The State contends that Title VII does not cover retirement funds, particularly this one; even if it does apply, the State is complying with Title VII which must be construed with the Equal Pay Act of 1963, 29 U.S.C. § 206(d). If the State changed to unisex tables, it would unlawfully reduce the vested benefits of men and endanger the stability of the retirement fund. The State finally asserts that it cannot be assessed counsel fees because of the Eleventh Amendment.

In 1945, the State created the Public Employes' Retirement System. ORS §§ 237.001–237.320. Since then, the system's retirement fund has accumulated assets of $800,000,000. The system serves 700 employers, including all state agencies and most local government subdivisions, and has about 100,000 active employee members.

Refund annuities are paid from this fund. At present, about 20,000 retired employees receive benefits.

As a condition of employment, the State requires all employees of participating employers to contribute to the retirement fund a percentage of their salaries.

When the employee reaches retirement age, in most cases 65, he or she is entitled to receive two sources of income from the State. One is a "life pension", which is wholly financed through employers' contributions.[2]

The other source of income is the refund annuity, which is financed wholly by employee contributions. The refund annuity provides four options. Under the standard option, the employee receives a monthly benefit from retirement until death. At retirement, the employee may elect to receive benefits under one of three other options.[3] The legal principles are the same under all four options.

Under the standard option, a woman who contributes as much as a man and who retires at the same age will receive about 90 per cent of the monthly benefit paid to the man, because the average woman in this retirement plan lives 19.52 years past the age of 65 and the average man only 14.21 years.

The parties have agreed, and I hold, that:

(1) This court has jurisdiction;

(2) The State is a proper party; and

(3) The plaintiffs have standing although they do not now receive benefits.

The three remaining issues are:

(I) Does Title VII of the 1964 Civil Rights Act cover this retirement plan?

If the answer is "yes",

(II) Does the use of sex-segregated life expectancy tables in the Oregon refund annuity plan conflict with the prohibitions of Title VII?

If the answer is "yes",

---

**2.** The life pension is not an issue here. But employers contribute more to life pensions for women as a class than they do for men. As a result, each woman, when she retires, receives the same monthly benefits under the life pension as a similarly situated man.

**3.** Under option "1", the employee receives a lesser monthly benefit from retirement until death, and at death a lump sum is paid to the named beneficiary. Under options "2" and "3", the lump-sum payment is replaced by annuities for the life of the retiree's named beneficiary, at 100 per cent and 50 per cent of the retiree's annuity.

(III) Should the plaintiffs be granted declaratory relief, injunctive relief and counsel fees?

## I.

Title VII prohibits discrimination in the compensation, terms, conditions, or privileges of employment.[4]

Although Title VII does not mention retirement plans, every court that has considered the issue has found that retirement plans are covered by Title VII. *Rosen v. Public Service Electric and Gas Company,* 477 F.2d 90 (3d Cir. 1973); *Peters v. Missouri-Pacific R. R.,* 483 F.2d 490 (5th Cir.), *cert. denied,* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 238 (1973); *Bartmess v. Drewrys U. S. A., Inc.,* 444 F.2d 1186 (7th Cir. 1971); *Fitzpatrick v. Bitzer,* 390 F.Supp. 278 (D.Conn.1974), *aff'd,* 519 F.2d 559 (2d Cir. 1975).

The State contends that even if Title VII covers most retirement plans, it does not cover this one. Most retirement plans, including those in the cases cited in the previous paragraph, provide for either employer contributions alone or a combination of contributions by both employers and employees.

Here, the refund annuities are financed solely from employee contributions. The State contributes nothing. The State asserts that it is only a stakeholder for the refund annuities and that the cited cases are therefore not in point.

■ The State requires its employees to contribute to the fund as a condition of their employment; it determines the rate of the contributions, the eligibility and qualifications of employees for benefits, the options available, the actuarial tables it believes appropriate, and the manner in which the fund is to be divided among men and women. The State also administers the fund. These are the actions of an employer, and not merely a stakeholder.

I therefore find that Title VII covers this retirement plan.

## II.

Does the use of sex-segregated life expectancy tables conflict with the prohibitions of Title VII?

There are at least two methods of comparing what women receive with what men receive.

One method is to compare what women as a class receive with what men as a class receive.

Under this comparison, women receive either the same or more than men. A man of 65 and a woman of 65 who have contributed the same amount to the retirement fund are entitled to annuities whose present value is equal. But because the average woman's retirement principal earns compound interest for five extra years, her absolute return will be greater than the average man's.

The State contends that this method— comparing women as a class with men as a class—is the proper method of comparison.

A second method is to compare what each individual woman receives with what each similarly situated individual man receives. Under this comparison, each individual woman receives a monthly benefit of about 90 per cent of that of her male counterpart.

The plaintiffs contend that this comparison—individual woman to individual man—is the proper method of comparison. They further contend that the discrepancy in benefits under this method of comparison violates Title VII.

---

**4.** Title VII reads in pertinent part:

"It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

In *Manhart v. City of Los Angeles Department of Water and Power,* 387 F.Supp. 980, 983–984 (C.D.Cal.1975), *appeal docketed,* 9th Cir., Sept. 30, 1975, the Los Angeles City Department of Water and Power required its women employees to make larger monthly contributions to a retirement fund than their male counterparts in order to receive the same monthly retirement benefits. Here, however, women pay the same, but get less monthly benefits. In each case, the employers regarded as legitimate the practice of segregating employee contributions and benefits according to sex. In each case, this practice, plus women's longevity, accounted for the disparity.

In an able, careful, and exhaustive opinion, Judge Harry Pregerson in *Manhart, supra,* examined the decisions and also the literature. He cited with approval the Harvard Law Review comment, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109 (1971), which at page 1174 stated:

> ". . . Title VII, in the field of employment, requires evaluation on an individual basis rather than a prediction made on the basis of a sex-defined group . . . . Title VII focuses on presenting each employee in an individual light, free from conclusions that may be drawn from the individual's membership in one sex or the other."

Judge Pregerson said at 983:

> "The basic principle which emerges from these authorities and from the case law is that sexual discrimination under [Title VII] exists whenever general fact characteristics of a sex-defined class are automatically applied to an individual within that class. [Citing cases] In passing Title VII,

Congress established a policy that each person must be treated as an individual and not on the basis of characteristics generally, and often falsely, attributed to any racial, religious, or sex group."

He found that the Los Angeles city agency treated women differently than men, and that, at 983:

> ". . . the reason for this differential treatment is the actuarial fact of female longevity which, in effect, involves the application of characteristics that may be true of a class of people to individuals within the class for which the characterization may or may not be true." [5]

Judge Pregerson concluded at 984:

> ". . . Congress intended in regard to sexual discrimination cases to strike at the entire spectrum of disparate treatment of individual men and women resulting from sex stereotypes. *Sprogis v. United Air Lines, Inc., supra* [7th Cir.] 444 F.2d [1194] at 1198. In short, under [Title VII], all stereotypic treatment of persons based on race, religion, or sex whether rational or irrational is dead. Because the Department of Water and Power's practice in question here violates these considerations by applying the general actuarial characteristic of female longevity to individual female employees who in reality may or may not outlive individual male employees, the court concludes that plaintiffs have established a case of discrimination under [Title VII] . . . ."

■ I agree with Judge Pregerson's careful analysis of Title VII and the conclusions to which he came. I hold that they are equally applicable here.

The State contends that one provision of Title VII which interlocks with the

---

5. Judge Pregerson's observation applies with particular force here. The great majority of men and women—84 per cent—share common death ages. That is, for every woman who dies at 81 there is a corresponding man who dies at 81. The remaining 16 per cent are women who live longer than the majority and men who live shorter. As a result, each woman is penalized because a few women live longer and each man benefits because a few men die earlier.

Equal Pay Act of 1963[6] permits the State to continue using its sex-segregated life expectancy tables. The Department of Labor's Wage-Hour Administrator has interpreted the Equal Pay Act as permitting an employer to choose between making equal contributions or paying equal benefits. That interpretation implies that the use of sex-segregated life expectancy tables is not discriminatory.

The Equal Employment Opportunity Commission (EEOC), however, has interpreted Title VII to require an employer to pay equal benefits regardless of any disparity in contributions. 29 C.F.R. § 1604.9(f). The EEOC applied its regulations to support the position taken by the plaintiffs here. Decision No. 74–118, CCH EEOC Decisions ¶ 6431 (Employment Practices Guide, 1974). Because of the conflict with the EEOC, the Department of Labor is now re-examining the Wage-Hour Administrator's interpretation of the Equal Pay Act. Proposed Dept. of Labor Reg. revising 41 C.F.R. § 60–20, 38 Fed.Reg. 35336 (1973).

■ Administrative interpretations are entitled to deference by the courts, but they are not binding. I agree with the EEOC's interpretation for the reasons set forth by Judge Pregerson. He said:

"Even if § 206(d)(1) [of the Equal Pay Act] applies to this case, the court believes that differentiation based on sex segregated actuarial tables constitutes a differential based on the 'factor' of sex in violation of that section." *Manhart, supra* at 984.

I recognize that the federal government permits and even uses sex-segregated life expectancy tables. A man and a woman of the same age receive unequal tax treatment if they each make the same donation to charity, reserving to themselves life interests. The man may exempt a larger portion of his gift from taxes, because presumably he will not live as long. In employment, however, Congress has said in Title VII that neither a man nor a woman may be treated unequally because of sex except for bona fide occupational qualifications, an exception not relevant here.

■ Finally, the State contends that changing to unisex life expectancy tables would reduce the vested benefits of men who have contributed to the retirement fund. The State says this would violate Oregon trust law.

Benefits vest only after employees retire. A man who now contributes to this fund is entitled to some benefits, but not to a specified amount.

Moreover, a man has a right to benefits as an individual—not as a member of a class of men. He has no right to receive larger benefits because he is a man, any more than he has a right to receive larger benefits because of race, color, creed, or nationality. That is what Title VII requires.

### III.

The plaintiffs seek declaratory and injunctive relief, and also counsel fees.

■ I hold that plaintiffs are entitled to a declaration that Title VII of the Civil Rights Act of 1964 prohibits the use of sex-segregated life expectancy tables in calculating refund annuity benefits for State employees.

Nevertheless, injunctive relief should be stayed. Both sides have announced

---

**6.** Title VII reads in pertinent part: "It shall not be an unlawful employment practice under this subchapter [Title VII] for any employer to differentiate upon the basis of sex in . . . the wages or compensation paid . . . if such differentiation is authorized by the provisions of section 206(d) of Title 29." 42 U.S.C. § 2000e–2(h).

Section 206(d) of Title 29, which is the Equal Pay Act of 1963, reads in pertinent part: "No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . less than the . . . wages [paid] to employees of the opposite sex . . . for equal work . . . except where such payment is made pursuant to . . . (iv) a differential based on any other factor other than sex . . . ." 29 U.S.C. § 206(d)(1).

an intention to appeal an adverse decision. The State should not be required to adopt unisex tables until and unless this decision is upheld on appeal.

The State contends that adopting unisex tables will threaten the financial soundness of the retirement fund. On the limited facts before the court, I do not think the fund is threatened.[7]

The plaintiffs also seek counsel fees. Title VII permits the court in its discretion to award counsel fees. Counsel fees are ordinarily given to a prevailing plaintiff. *Robinson v. Lorillard Corp.,* 444 F.2d 791, 804 (4th Cir. 1971), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971), 1007 (1972). If the plaintiffs prevail on appeal, they will be awarded counsel fees in an amount to be determined later.

The State contends that it cannot be assessed counsel fees because of the Eleventh Amendment. In my view a more appropriate source of counsel fees is the refund annuity benefit fund, no part of which contains State funds and all of which was contributed by the employees. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

This opinion shall constitute findings of fact and conclusions of law under Fed.R.Civ.P. 52(a).

Counsel for plaintiffs shall prepare an appropriate judgment.

---

**7.** This disparity between monthly payments to men and women is about 10 per cent. If refund annuity benefits to women were raised to the level of men's benefits, and if half the current recipients are women, the total refund annuity outlay would increase only 5 per cent.