Nathalie NORRIS, on behalf of herself and all others similarly situated, Plaintiffs,

v.

ARIZONA GOVERNING COMMITTEE For Tax Deferred Annuity and Deferred Compensation Plans, State of Arizona and Richard Rabago, Margaret Griffeth, Ted Williams, Russ Webb, Walter Madsen, Dave Conner and Jack La Sota, in their capacity as members of the Governing Committee For Tax Deferred Annuity and Deferred Compensation Plans, Defendants.

No. CIV 78–341 PHX VAC.

United States District Court, D. Arizona.

March 12, 1980.

---

Bruce Meyerson, Arizona Center for Law in the Public Interest, Phoenix, Ariz., for plaintiffs.

Robert K. Corbin, Atty. Gen., John L. Jones, Asst. Atty. Gen., Division of Transportation, Phoenix, Ariz., for defendants.

## OPINION

CORDOVA, District Judge.

The plaintiffs and defendants in this case presented to the Court cross motions for summary judgment upon an agreed statement of facts. The stipulated facts are admitted as true for the purpose of the respective motions for summary judgment.

## NATURE OF THE CASE

The plaintiff, Nathalie Norris, requests that this case be certified as a class action and filed the same as a female employee of the State of Arizona challenging certain alleged discriminatory aspects of the Arizona Deferred Compensation Plan ("Plan"). The Plan was adopted by the defendant Arizona Governing Committee For Tax Deferred Annuity And Deferred Compensation Plans ("Governing Committee"). The action is filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff contends that because both sexes contribute an equal amount into a retirement account and upon retirement women receive lesser monthly annuity payments than men, that this constitutes discrimination based upon sex and is therefore contrary to the provisions of the Civil Rights Act.

The plaintiff seeks (1) to permanently enjoin the defendants from carrying out their obligations under A.R.S. § 38–871 et seq., through the use of sex segregated actuarial tables, (2) that the Court direct annuity payments to female employees who have retired be made equal to similarly situated male employees, and (3) that this cause be certified as a class action pursuant to Rule 23(b)(2)(3), Federal Rules of Civil Procedure.

## FACTS

The stipulated material facts are as follows:

The plaintiff Nathalie Norris is employed by the State of Arizona with the Department of Economic Security. She participates in the State's Deferred Compensation Program adopted by the defendant Governing Committee for tax deferred annuity and deferred compensation plans.

The plaintiff Governing Committee is authorized under A.R.S. § 38–871 to contract for the purposes of establishing tax deferred compensation and annuity programs for employees of the State of Arizona. The defendant State of Arizona is deemed an employer within the meaning of Section 701(b) of Title VII of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e(b). The individual named defendants are members of the Governing Committee.

The parties agree that the plaintiff has exhausted her administrative remedies and that the Court has jurisdiction pursuant to 42 U.S.C. § 2000e–5(f) and 28 U.S.C. § 1343.

Pursuant to Rule 23(b)(2), F.R.C.P., the plaintiff's class is alleged to be all female employees who have chosen to enroll in or in the future will choose to enroll in the State Deferred Compensation Plan. The parties agree that as of August 18, 1978 there were 681 women employees of a total of 1,675 participating in the plan. Of the 681 women, 572 had elected some form of future annuity option. As of that same date, 10 women had retired and 4 had elected a lifetime annuity payout.

The Plan is described as follows:

In 1972, Arizona enacted the State Deferred Compensation Plan (A.R.S. § 38–871 et seq.). A.R.S. § 38–871 has been amended three times since its original enactment, but none of those amendments have any substantial effect on this litigation. On May 10, 1973, the Governing Committee promulgated rules and regulations which were amended in October of 1974.

The Plan is offered to all state employees on a voluntary basis. There is no employer contribution to the Plan. The benefits to the employee result from immediate tax savings and a promise by the State to ultimately pay the employee a sum of money based upon accumulated values of the employee's account. The Governing Committee made the selection of certain companies as funding media which included life insurance companies with annuity contracts.

One of the options open to the employee is that she may elect to receive a fixed sum for a fixed period of time. The parties agree that all funding media, except the Arizona State Employees Credit Union and the Keystone B4 Mutual Fund, will pay on direction by the Governing Committee a stipulated periodic amount for a specified period of time. The amount or period of time would be determined by the then present worth of the employee's accumulations during the period of time he or she has been a member of the Plan, divided either by the periodic payment amount requested to determine the length of time such an amount would be paid, or the period requested to determine the amount. These payments would be the same for male or female, assuming all other factors are the same.

However, the parties further agree that for those persons who elect annuity options, the payouts are subject to mortality tables which are published in the contract with the particular company. These payments are calculated on the basis of the present worth of the person's account at the time payments are to begin divided by the months a person of that age and sex is expected to live, and factored by any guaranteed payment period. Because according to the annuity tables females as a class live longer than men as a class, the period of time for which payments are to be made to women would be longer than for men and thus, the periodic payment to women is less than for men. The amounts received are determined by the use of actuarial tables published by the particular company.

The plaintiff, on May 3, 1975, made application to the Governing Committee to participate under the Plan and requested that her monies be invested in Lincoln National Life Insurance Company's fixed annuity contract. Her application was approved on May 9, 1975 and she has been a participant in the Plan since that date. At the time she becomes eligible to receive benefits the options available to her would range from a lump sum payment to an annuity payment based upon the rates published by either the Lincoln National Life Insurance Company or any other funding account which would be in existence at that time.

Assuming the plaintiff does not increase or decrease the amount being deferred by her, and all things remaining equal, the total value of her account at age 65 would be $53,890.93, and the annuity payment that she would receive at that time would be $320.11 per month for life, with 10 years certain. However, were the plaintiff a male, and assuming all other factors above remained the same, the payment would be $354.07 per month for life, with 10 years certain.

All of the companies participating in the State Deferred Compensation Plan use sex segregated actuarial tables. Although life expectancy is the rationale for using sex segregated mortality tables, other factors affecting longevity, such as smoking habits, alcohol consumption, weight, prior medical history and family history, are not specifically taken into consideration in determining the amount of monthly annuity to be paid. For example, a male who has smoked for 30 years is paid the same as a male who has never smoked. In compiling the mortality table upon which the annuity is based, males who smoked were included with males who never smoked.

## DISCUSSION

The program in question is set forth in Article 5, Chapter 5, Title 38, A.R.S., and is labeled "Tax Deferred Annuity and Deferred Compensation Programs". The program is one which provides for deferred compensation and avoidance of income tax on present income.

The Plan is an employee benefit and the effect of participation is set forth in the statute as follows:

"Any benefits provided pursuant to the provisions of this article shall be in addition to any other benefits provided by law for any employees of this state and shall be supplemental to the provisions of the state retirement system or plan provided pursuant to title 38, chapter 5, articles 2 and 2.1."

(A.R.S. § 38–874 A)

Additionally, A.R.S. § 38–871 C(1), as amended, directs that any program adopted pursuant to the legislation be operated without cost or contribution from the State, and A.R.S. § 38–872 makes participation voluntary.

The plaintiff's contention is that the Plan is violative of Title VII of the Civil Rights Act.[1]

The use of sex segregated actuarial tables as applied to retirement plans has been held by the United States Supreme Court as violative of Title VII of the 1964 Civil Rights Act. In *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the employer adopted a retirement plan which provided for equal annuity payments for men and women upon retirement, but required larger contributions from women employees. This practice was held by the Supreme Court to be discriminatory and prohibited by the Civil Rights Act.

However, the question before this Court is distinguishable from *Manhart*, hence this Court must consider whether that distinction necessarily dictates a different result. In *Manhart*, it was a retirement plan which was being considered by the Court with mandatory participation by the employee and with females required to pay more into the fund than male employees in order to receive the same monthly payment at retirement. The plan now before this Court is a deferred compensation plan with voluntary participation, with females and males paying the same amount into the fund, and females receiving less in monthly annuity payments at retirement.

As retirement benefits are part of the compensation terms of an employee, and a privilege of employment, the Court must resolve whether a Deferred Compensation Plan is likewise a benefit and a privilege of employment? If so, should the benefit and the privilege to the female employees and the male employees be the same? The Court concludes the answer to both questions to be in the affirmative.

Addressing the question of voluntariness of employee participation in a deferred compensation plan, discrimination against an employee because of sex is violative of Title VII of the 1974 Civil Rights Act whether the employee's participation is voluntary or mandatory, if the discrimination results or may result in a financial benefit, more advantageous conditions of employment, or better or additional privileges to the members of one sex and not the other. The Arizona law in Section 38–874 clearly designates the deferred compensation plan as a benefit in addition to any other benefits provided by law and supplemental to the provisions of the State Retirement System or Plan. The theory of deferred compensation is a clear financial benefit to the employees since it results in reduced taxes on present income. That part of the taxes which are not paid by the employee and result in a tax savings is a monetary saving to the employee. It is unrealistic and illogical to accept the proposition that because a female has the option not to participate that she is not being discriminated against. If she elects not to participate then she will of course not defer her compensation and will have to pay income taxes at the present rate on all her income. She will thereby forego her right to avoid a present tax on the deferred income and pay less tax some years hence when her income is in a reduced amount.

---

1. The applicable portion of Title VII, Section 703(a)(1) provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin . . ."
(42 U.S.C. § 2000e–2(a)(1))

■ Whereas, in *Manhart*, it was required that female employees make a larger contribution to the pension fund than male employees in order to receive the same monthly payments upon retirement, here both sexes making the same contributions into the deferred compensation plan and selecting the same annuity benefit program receive dissimilar monthly payments in that the female employee receives a lesser amount than the male employee. It is generally accepted that women, as a class, live longer than men. It is equally true that many women do not live as long as the average man and many men outlive the average woman. The question before this Court, therefore, is the same question that was before the Court in *Manhart*. Is the existence or nonexistence of "discrimination" to be determined by comparison of class characteristics or individual characteristics? The Civil Rights Act makes it unlawful "to discriminate against any *individual* with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin". 42 U.S.C. § 2000e–2(a)(1). It logically follows that if the Civil Rights Act is intended to be applied to individuals, then a generalization about a class even if true is an insufficient basis for disqualifying an individual to whom the generalization does not apply.

The defendants' response relies on dictum in *Manhart* wherein the Court stated:

> "Nothing in our holding implies that it would be unlawful for an employer to set aside equal retirement contributions for each employee and let each retiree purchase the largest benefit which his or her accumulated contributions could command in the open market."

In the footnote the Court warned that Title VII primarily governs relations between employees and their employer, not between employees and third parties. The Court further stated that an employer could not avoid his responsibilities by delegating discriminatory programs to corporate shells. The Plan offered by the State of Arizona does not permit an employee to use his or her accumulated funds and purchase a retirement program in the "open market". To the contrary, the employee must select an option offered by one of the funding media approved by the State. The State Committee selects the funding media which makes the annuity payments. If the employee selects an annuity it is with one of the companies selected by the Committee. The funding media which have entered into the agreements with the State use sex-segregated actuarial tables.

■ The fact that employees may select an option other than annuity payment, i. e., lump sum distribution, likewise has no bearing on the lawfulness of the plan. Most female employees select the annuity option. In this case, 572 out of 681 female employees so elected. The reason is that the income tax must be paid on the sums as they are withdrawn from that account, and it is to the employee's advantage to spread the tax liability over a number of years rather than paying taxes on the full accumulated amount in one lump sum.

The Indiana Supreme Court rejected the availability of options as a defense to an otherwise discriminatory plan. *Reilly v. Robertson*, 360 N.E.2d 171 (Ind.1977), cert. denied, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977).

> "We are not convinced that the existence of such options render the uneven distribution of benefits under 'A' options constitutionally permissible. From the record we know that 'A' options are selected by the vast majority of all annuitants and that 'B' options are not the functional equivalent of 'A' options."

Again, in *E. E. O. C. v. Colby College*, 589 F.2d 1139 (1st Cir. 1978), the alleged discrimination was "that the ultimate monthly annuity payments to women were smaller than those made to their male counterparts". The Court in *Colby* addressed itself to the applicability of Title VII to a situation where females received smaller monthly annuity payments and found the same discrimination, stating:

> "If the statute's (Title VII) 'focus on the individual' forbids an employer from

treating women as a class with respect to annuities so as to require from them higher premiums, . . . it is difficult to perceive a distinction that would permit a plan whereby women make contributions equal to those of men, but receive smaller monthly payments. . . ."

The plaintiff additionally contends that the Plan violates the equal protection clause of the Fourteenth Amendment. A.R.S. § 38–872 refers to state employees, makes no reference to sex, and is not gender-based.[2] Since the Arizona statute is gender-neutral on its face, the Court must then consider whether the classification itself, covert or overt, if not based upon gender results nevertheless in an adverse effect which reflects invidious gender-based discrimination.

 It may be arguable that the use of actuarial tables by companies with whom Arizona has contracted constitutes gender-based discrimination violative of the equal protection clause. However, as was pointed out in *Personnel Administrator of Massachusetts v. Finney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), there must be a purposeful discrimination shown before the statute or the program would be found to be offensive to the equal protection clause. These defendants contracted with insurers to provide annuities to participating employees who chose an option, when entitled to benefits under the Plan, where the insurer pays less in monthly payments to females than similarly situated males. From the facts agreed upon, it is clear that this classification was not made by the defendants but rather are the results of the insurers' judgment. This is somewhat less than the purposeful invidious gender-based discrimination necessary for a finding that the compensation plan violates the equal protection clause of the Fourteenth Amendment. The Court finds that it does not.

 The Court next considers whether this cause should be certified as a class action pursuant to Rule 23(b)(2), F.R.C.P. In order to certify an action as a class suit, the Court must find that the prerequisites of Rule 23(a) have been met and that the action falls within the three categories of Rule 23(b). Rule 23(a) provides that one or more members of a class may sue or be sued on behalf of a class if:

"...

1. [T]he class is so numerous that joinder of all members is impracticable;

2. there are questions of law or fact common to the class;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. the representative parties will fairly and adequately protect the interest of the class."

The requirements of Rule 23(a) have been met from the facts stipulated to by the parties.

Rule 23(b)(2) provides that an action may be maintained as a class action where:

"[T]he part[ies] opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

It is clear from plaintiff's complaint and the stipulated facts of the parties that the defendants, "the party opposing the class", have acted or refused to act on grounds generally applicable to the class. In light of the claims of the class, injunctive relief is an appropriate remedy.

The plaintiff class shall consist of all female employees of the defendant State of Arizona who have enrolled in, or in the future will choose to enroll in the State of Arizona Deferred Compensation Plan pursuant to A.R.S. § 38–871 *et seq.*

2. "Section 38–872

A. State employees may participate in tax deferred annuity and deferred compensation programs established pursuant to the provisions of Section 38–871.

B. Participants in such plans shall authorize their employers in writing to make reduction or deductions in their remuneration as provided in an executed deferred compensation agreement.

## CONCLUSION

██ Male and female employees must be treated equally by an employer. Any discrimination against a female employee in respect to compensation, conditions of employment, or privileges of employment solely because of her sex is a violation of Title VII, Section 703(a)(1) of the Equal Employment Opportunity Act of 1974. The administration of the Deferred Compensation Plan of the State of Arizona, which provides or permits smaller monthly annuity payments to a female employee than to a male employee contributing the same amount, is discriminatory and in violation of Title VII of the 1964 Civil Rights Act.

Pursuant to the provisions of Rule 23, Federal Rules of Civil Procedure, this cause may be maintained as a class action. The plaintiff, Nathalie Norris, on behalf of herself and for the class, is entitled to a summary judgment permanently enjoining the defendants from carrying out their obligations under A.R.S. § 38–871 *et seq.*, through the use of sex segregated actuarial tables, and for an order directing that annuity payments to female employees who have retired shall be equal to similarly situated male employees.