671 F.2d 330
 28 Fair Empl.Prac.Cas. 369,
28 Empl. Prac. Dec. P 32,584,
3 Employee Benefits Ca 1097
Nathalie NORRIS, on behalf of herself and all others
similarly situated, Appellee,
v.
ARIZONA GOVERNING COMMITTEE FOR TAX DEFERRED ANNUITY And
Deferred CompensationPlans, State of Arizona, and Richard
Rabago; Margaret Griffith; Ted Williams;Russ Webb; Walter
Madsen; Dave Conner and Jack La Sota, in their capacity
asmembers ofthe Governing Committee for Tax Deferred Annuity
and Deferred CompensationPlans, Appellants.
 No. 80-5372.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 12, 1981.
Decided March 11, 1982.
 
 John L. Endicott, Los Angeles, Cal., argued, for appellants; John L. Jones, Phoenix, Ariz., on brief.
 Bruce E. Meyerson, Phoenix, Ariz., Kenneth J. Burchfiel, E.E.O.C., Washington, D. C., argued, for appellee; Larry M. Lavinsky, Proskauer, Rose, Goetz & Mendelsohn, New York City, on brief.
 Appeal from the United States District Court for the District of Arizona.
 Before GOODWIN and POOLE, Circuit Judges, and NIELSEN,* District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 The Arizona Governing Committee ("Arizona") appeals from a summary judgment in favor of the plaintiff and her class ("Norris"). Relying on Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the court enjoined Arizona from using sex-segregated actuarial tables in its Deferred Compensation Plan and ordered that future annuity payments to female retirees equal the payments to similarly situated men.
 
 
 2
 The summary judgment motions of plaintiff and defendant were argued on stipulated facts. A complete summary of the facts is found in the district court opinion. Norris v. Arizona Governing Committee, 486 F.Supp. 645, 647-48 (D.Ariz.1980). Basically, Arizona is authorized by Ariz.Rev.Stat.Ann. § 38-871 to investigate, approve and contract for tax deferred compensation and annuity programs for its employees. Norris' class, which was certified, consists of all female employees of Arizona who have enrolled in, or will enroll in, the plan.
 
 
 3
 The plan is offered to all employees on a voluntary basis. It is funded entirely by employee contributions. The employees are offered one of three options. First, an employee may elect the lump sum option. This option allows one to withdraw at once all of the accumulated annuity. Second, the employee may elect to receive a fixed sum for a fixed period of time. The third option-the life annuity contract-is the one in question here. The employee may elect to receive a certain amount of money each month for life. Arizona selects the companies with which the employee must contract. All the companies selected by Arizona use sex-segregated mortality tables in computing the monthly amounts due under the life annuity contract.[1]
 
 
 4
 Norris challenged the plan as violative of Title VII and the Fourteenth Amendment. The district court agreed that the plan violates Title VII. The court held that the plan does not violate the Fourteenth Amendment because the discrimination was not intentional. The court enjoined Arizona from using sex-segregated actuarial tables and ordered that future annuity payments to women equal the payments to similarly situated men. We affirm.
 
 
 5
 A. Title VII Applies.
 
 
 6
 The district court relied extensively on Los Angeles Dept. of Water & Power v. Manhart, supra. The pension plan in Manhart required female employees to make larger contributions to the fund than male employees. This pension plan was based on sex-segregated mortality tables and Los Angeles' experience that women live longer than men. The pension plan was funded by contributions from both the employees and Los Angeles. It was administered entirely by Los Angeles; no private insurance company was involved.
 
 
 7
 Manhart found this pension plan unlawful because Title VII forbids discrimination against any individual on the basis of sex. Id. at 708, 98 S.Ct. at 1375. The court recognized that the plan treated the class of women equal to the class of men (because the present value of the pensions of similarly situated males and females is the same, due to the greater longevity of women). It held, however, that an individual woman cannot be required to take home less pay than a similarly situated man because of stereotypical characteristics of the class of women, which she as an individual may not share.
 
 
 8
 Los Angeles argued that without the extra charge women employees, as a class, will be subsidized by male employees. The court rejected this argument because the question of fairness to a class is a question for the legislature. Congress, it said, has decided that classifications based on sex are unlawful. Id. at 709, 98 S.Ct. at 1376.
 
 
 9
 Los Angeles also argued that the Bennett Amendment authorized the differential.[2] The court rejected this argument because the pension did not reflect a differential "based on any other factor other than sex." Id. at 712-713, 98 S.Ct. at 1377-1378. The court rejected the argument that the differential was based on longevity because, although there are numerous factors which influence longevity (e.g., weight, smoking, possibly race), Los Angeles relied only on the factor of sex.
 
 
 10
 The Manhart Court concluded its discussion of the validity of the plan by noting that Title VII did not intend to revolutionize the insurance and pension industries. It stated that the holding did not imply that an employer could not set aside equal retirement benefits for each employee and let the employee then purchase the best pension available on the open market.
 
 
 11
 In Manhart, the discriminatory pension plan was compulsory. Here, the plan is voluntary. An employee need not defer compensation. Instead, she may elect to receive her entire compensation each payday.
 
 
 12
 A voluntary benefit offering tax savings is a "privilege" of employment and a "fringe benefit." Thus, this option of the plan is covered by Title VII even though Arizona does not require that each employee participate. See Peters v. Wayne State University, 476 F.Supp. 1343 (E.D.Mich.1979) (Title VII applies even though employee participation is voluntary). Arizona has cited no law to the contrary.
 
 
 13
 Arizona and amicus American Council of Life Insurance argue that the McCarran-Ferguson Act (the Act), 15 U.S.C. § 1011, et seq., prohibits the application of Title VII in this situation. The Act states:
 
 
 14
 "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance...." 15 U.S.C. § 1012(b).
 
 
 15
 Appellants argue (1) that the use of sex-based mortality tables involve the business of insurance; and (2) Arizona regulates the business of insurance (see, e.g., Ariz.Rev.Stat.Ann. § 20-448 prohibiting discrimination in rates). Therefore, Title VII may not be construed to prohibit employers from offering life annuity contracts from private insurers such as those condemned here by the district court.
 
 
 16
 The fallacy in this argument is that the district court has not interfered with the business of insurance. Title VII has not been construed so as to supersede Arizona's laws. The court has not said that the companies may not use sex-segregated annuity tables. Nor has it joined the companies as defendants or required the companies to pay the adjusted annuities. All the court has done is tell the employer that it may not offer a fringe benefit which treats an individual woman differently than an individual man. As Manhart noted, Title VII says nothing about the situation in which a woman takes her money and chooses to purchase an annuity plan using sex-based tables. Title VII governs the relationship between employees and their employer, not between employees and third parties. Manhart, supra, 435 U.S. at 718, n.33, 98 S.Ct. at 1380, n.33. But compare Women in City Govern. United v. City of New York, 515 F.Supp. 295, 304-06 (S.D.N.Y.1981) (holding that Congress did not intend the McCarran-Ferguson Act to limit Congress' power to enact civil rights legislation that might affect the business of insurance) with Spirt v. Tchrs. Ins. & Annuity Ass'n, 475 F.Supp. 1298, 1304 (S.D.N.Y.1979) (holding application of Title VII to TIAA (a nonprofit legal reserve life insurance company) would supersede New York law, thus it's precluded by the McCarran-Ferguson Act).
 
 
 17
 B. The Plan Violates Title VII.
 
 
 18
 Arizona argues that to satisfy Title VII Norris must prove that Arizona intended to discriminate against women. It argues that it did not intend to discriminate because it offered the plan in spite of, not because of, the actuarial difference for women.
 
 
 19
 The short answer to this argument is provided by Manhart. Manhart required no affirmative showing of intent. Nowhere was the need to prove intent discussed. Instead, the court focused on whether Title VII prohibited the differentials in the pension fund. See e.g., Manhart at 711, 98 S.Ct. at 1377: "(The pension) does not pass the simple test of whether the evidence shows 'treatment of a person in a manner which but for that person's sex would be different.' " Accord Spirt, supra, 475 F.Supp. at 1310 n.18.
 
 
 20
 Moreover, this circuit has held that facially discriminatory practices are intentional discrimination for the purposes of Title VII regardless of the subjective motivation. See Krause v. Sacramento Inn, 479 F.2d 988 (9th Cir. 1973); Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002, 1006 (9th Cir. 1972).
 
 
 21
 Thus, because on their face the practices in question treat men and women differently, Norris need not prove Arizona's animus in adopting the plan.
 
 
 22
 In Manhart, the plan required women to pay more than men into the retirement account. Thus, their take-home paycheck was smaller than similarly situated males. In this case, women who pay in equal amounts receive smaller annuity checks than similarly situated men. Every court that has considered the issue has refused to distinguish Manhart because smaller benefits rather than greater contributions were involved.[3] Thus, this aspect of the plan is not a valid reason for distinguishing Manhart.
 
 
 23
 Arizona also argues that Manhart is limited to employer-operated funds. It cites the following language: "All that is at issue today is a requirement that men and women make unequal contributions to an employer-operated pension fund." 435 U.S. at 717, 98 S.Ct. at 1380.
 
 
 24
 Other language in Manhart indicates that the opinion was not confined to employer-operated pension funds:
 
 
 25
 "We do not suggest, of course, that an employer can avoid his responsibilities by delegating discriminatory programs to corporate shells. Title VII applies to 'any agent' of a covered employer ...." 435 U.S. at 718 n.33, 98 S.Ct. at 1380 n.33.
 
 
 26
 The reasoning of Manhart is no less persuasive where, instead of operating a plan itself, an employer designates certain companies to operate the plan. In both cases, the plan offered by the company discriminates against women because it looks at them as a class instead of as individuals.
 
 
 27
 In addition, none of the cases subsequent to Manhart has found Title VII inapplicable because an employer-operated pension plan was not involved. See Equal Employment Opportunity Com'n v. Colby College, 589 F.2d 1139 (1st Cir. 1978); Peters v. Wayne State University, supra; Spirt v. Tchrs. Ins. & Annuity Ass'n, supra.
 
 
 28
 Arizona attempts to distinguish these cases by stating that those employers took an active role in administering or developing the plan. This distinction is illusory. In this case, as in the above cases, it is clear that the adoption of the plan constitutes active participation without which the challenged program could not operate. See Colby, supra, 589 F.2d at 1141; Sobel v. Yeshiva University, 477 F.Supp. 1161, 1166 n.4 (S.D.N.Y.1979); Spirt, supra, 475 F.Supp. at 1308-09. Arizona made the selection of certain companies as funding media. It approved participation in the plan and deducted the appropriate amount from the employee's salary. The fact that the plan is operated by a private insurance company rather than Arizona does not render Manhart less controlling.
 
 
 29
 Arizona also argues that the district court erred in finding the plan discriminatory because the plan fell within Manhart 's open market exception. After concluding that Los Angeles' pension plan was discriminatory, the Manhart court said:"All that is at issue today is a requirement that men and women make unequal contributions to an employer-operated pension fund. Nothing in our holding implies that it would be unlawful for an employer to set aside equal retirement contributions for each employee and let each retiree purchase the largest benefit which his or her accumulated contributions could command in the open market...." 435 U.S. at 717-18, 98 S.Ct. at 1380.
 
 
 30
 Arizona discusses two reasons why it thinks the plan falls within Manhart 's open market exception. (1) The plan offers other nondiscriminatory options, and (2) the plan only reflects the limits which exist in the marketplace.
 
 
 31
 Arizona argues that it provided Norris and her class with exactly what was referred to by the Supreme Court. They were given the option of taking their deferred compensation in a lump sum and buying the largest annuity they could find on the open market. Arizona's amicus stated that simply providing a lump sum distribution option to each participant regardless of sex is equivalent to open market investment opportunities.
 
 
 32
 This argument is not well taken. The exception suggests that although an employer may not offer discriminatory benefits, it may offer equal benefits despite the fact that men and women cannot purchase equal goods with their equal benefits (as per Manhart, equal is defined with reference to the individual rather than with reference to the class of women). In other words, the open market exception in Manhart says the employer must not discriminate against women, but the employer is not responsible for discrimination against women by third parties.
 
 
 33
 In this case, it is undeniable that the lump sum option treats men and women the same. But Arizona has also offered a benefit which favors men. It has not merely offered a benefit which will purchase different amounts of goods from a third party. It has cited nothing that indicates that the availability of nondiscriminatory options legitimizes a discriminatory option.
 
 
 34
 Arizona argues that the plan does not discriminate because it reflects the limits in the marketplace. It argues that the restriction is not of its own making. It cites Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); and Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).
 
 
 35
 This argument also misses the mark. Title VII has never been construed to allow an employer to maintain a discriminatory practice merely because it reflects the marketplace or available options outside the employment context. In this case, Arizona overlooks the fact that it specifically adopted the discriminatory plan. Thus this case is not analogous to Harris v. McRae (abortion funding case) where the state refused to remove an obstacle to the woman's exercise of her right (i.e., it did not take action to overcome the limits of the marketplace). In this case, Arizona did not merely refuse to provide an annuity plan to women which treated them equally. It affirmatively offered a plan, better than that available for purchase by an individual, which discriminated against women.
 
 
 36
 C. The Propriety of the Award.
 
 
 37
 Arizona argues that the district court award was improper. The order permanently enjoined "the defendants from carrying out their obligations under Ariz.Rev.Stat.Ann. § 38-871 et seq., through the use of sex-segregated tables and directing that future annuity payments to female employees who have retired shall be equal to similarly situated male employees."
 
 
 38
 Arizona argues that this order is an abuse of discretion for two reasons. First, relying on Chastang v. Flynn & Emrich Co., 541 F.2d 1040 (4th Cir. 1976), it said that passive abusers, such as Arizona, should not pay. Second, it argues that the order is an abuse of discretion because Arizona taxpayers, through their legislators, indicated in Ariz.Rev.Stat.Ann. § 38-871 that they did not want to pay for the deferred compensation plan.
 
 
 39
 These arguments are without merit. First, Manhart and the cases construing it[4] have allowed recover in substantially similar circumstances. Second, the plaintiffs in Chastang recovered; the trustee who merely administered the plan chosen by the employer was not required to pay damages, although it was enjoined. Third, the fact that Arizona did not want to pay for the plan does not insulate it from making payments to equalize the treatment received by women. If this were not the case, a state could insulate itself from Title VII or § 1983 damages merely by saying it did not intend for its taxpayers to be burdened.
 
 
 40
 Arizona's Tenth Amendment arguments also lacks merit. Arizona argues: (1) that even though National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), was limited to the Tenth Amendment's restriction on Congress' commerce power, it might apply to law passed pursuant to Section 5 of the Fourteenth Amendment; and (2) that Title VII was enacted pursuant to the Commerce Clause and thus National League of Cities applies. National League of Cities does not apply because the Tenth Amendment only limits laws passed pursuant to the Commerce Clause. Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), clearly holds that the Title VII amendments which extended the Act to state government employees were passed pursuant to Section 5 of the Fourteenth Amendment. The federalism argument cannot be used to prevent prospective damage awards for violation of federal law.
 
 
 41
 D. Conclusion.
 
 
 42
 Arizona's plan is unlawful under Manhart. Title VII applies to these fringe benefits which are offered to Arizona's employees on an optional basis. The existence of nondiscriminatory options does not legitimize the discriminatory option in the plan. This plan does not come within the open market exception in Manhart because Arizona did not offer equal benefits to men and women and let them purchase the best option they could on the open market. Finally, the award was proper. It did no more than was authorized by Manhart.
 
 
 43
 Accordingly, the decision is affirmed.
 
 
 44
 NIELSEN, District Judge, sitting by designation, dissenting:
 
 
 45
 I believe that Arizona's voluntary Deferred Compensation Plan falls clearly within the Manhart open market exception.
 
 
 
 *
 The Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Essentially, the accumulated money is divided by the number of months which an average person of that sex would live. Because women, as a class, live longer, their monthly payments are smaller. E.g
 Accumulated Annuity = Yearly
--------------------
 Life span after Payment
 Retirement
$1000 = $100/yr (M) $1000 = $50/yr (F)
----- -----
10 yrs 20/yrs
 As Judge Solomon noted in Henderson v. St. Of Or. By & Through Bur. of Labor, 405 F.Supp. 1271 (D.Or.1975), in Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), 84 per cent of women have the same life span as men, yet those 84 per cent received less money than their male counterparts. Id. at 1275 n.5.
 
 
 [2]
 The Bennett Amendment allows differentiation based on sex if it is authorized by the Equal Pay Act. The Equal Pay Act allows employers to pay women different wages for equivalent work if it is a "differential based on any other factor other than sex." Manhart, 435 U.S. at 712, 98 S.Ct. at 1377
 
 
 [3]
 Equal Employment Opportunity Com'n v. Colby College, 589 F.2d 1139 (1st Cir. 1978) (equal mandatory pension contribution; women paid less); Women in City Govern. United v. City of New York, 515 F.Supp. 295, 298 (S.D.N.Y.1981) (women pay in more; receive generally unequal monthly annuity or pension checks); Shaw v. Inter. Ass'n of Machinists & Aerospace Workers, 24 F.E.P. 995 (C.D.Cal.1980) (BNA) (equal mandatory contributions for joint and survivor annuities, smaller monthly payments); Sobel v. Yeshiva University, 477 F.Supp. 1161 (S.D.N.Y.1979) (equal mandatory pension contributions; women paid less); Peters v. Wayne State University, 476 F.Supp. 1343 (E.D.Mich.1979) (mandatory retirement plan; women contributed equally but received less); Henderson v. St. Of Or. By & Through Bur. of Labor, 405 F.Supp. 1271 (D.Or.1975) (equal mandatory retirement contribution, smaller monthly payments to women)
 
 
 [4]
 See cases cited in note 3 (excluding Sobel which sent the case to trial) and Henderson (which was decided before the Supreme Court's decision in Manhart)