**Nathalie NORRIS, on behalf of herself and all others similarly situated, Plaintiffs-Appellants,**

**v.**

**ARIZONA GOVERNING COMMITTEE FOR TAX DEFERRED ANNUITY AND DEFERRED COMPENSATION PLANS, STATE OF ARIZONA, et al., Defendants-Appellees.**

**No. 85–1640.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1986.

Decided Aug. 11, 1986.

Amy J. Gittler, Phoenix, Ariz., for plaintiffs-appellants.

Barry A. McNaughton, Phoenix, Ariz., for defendants-appellees.

Before PREGERSON, POOLE and NOONAN, Circuit Judges.

PREGERSON, Circuit Judge.

In *Norris v. Arizona Governing Committee*, 486 F.Supp. 645, 652 (D.Ariz.1980), the district court held that the State of Arizona's deferred compensation plan violated Title VII and ordered retroactive relief. We affirmed. *Norris v. Arizona Governing Committee for Tax Deferred Annuity*, 671 F.2d 330, 336 (9th Cir.1982). The Supreme Court affirmed on the merits, but held that we erred in granting retroactive relief. *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 1074–75, 103 S.Ct. 3492, 3494, 77 L.Ed.2d 1236 (1983) (per curiam).

On remand, the district court limited its order to granting prospective relief and banned the use of gender-based annuity tables only for contributions made after August 1, 1983, the date of the Supreme Court's decision. In amending its order, the district court refused to require the State of Arizona to raise the level of women's *prospective* benefits up to the level previously paid to men. Norris contends that the district court's amended order conflicts with the Supreme Court's decision in her case and violates the Equal Pay Act, 29 U.S.C. § 206(d)(1).

We disagree and therefore affirm the district court's order.

## BACKGROUND

On April 25, 1978, Nathalie Norris brought this case as a class action suit against the Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation and the State of Arizona (the "State") alleging that the State's deferred compensation plan (the "Arizona Plan") violated section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). The Arizona Plan used gender-based actuarial tables and paid lower monthly retirement benefits to women than to men.

On March 13, 1980, the district court certified the case as a class action and granted summary judgment for the plaintiff class.[1] *Norris v. Arizona Governing Committee*, 486 F.Supp. 645, 652 (D.Ariz. 1980). The court held that the Arizona Plan violated Title VII. *Id.* It directed the State to stop using gender-based actuarial tables and ordered the State to make the annuity payments of retired female employees equal to the annuity payments of similarly situated male employees. *Id.* We affirmed the district court's decision and order. *Norris v. Arizona Governing Committee for Tax Deferred Annuity*, 671 F.2d 330, 336 (9th Cir.1982).

Applying *City of Los Angeles, Department of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court affirmed our ruling on the liability issue but reversed on the remedy issue. *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 1074–75, 103 S.Ct. 3492, 3494, 77 L.Ed.2d 1236 (1983) (per curiam) ("*Norris I* "). The Court held that the district court erred in granting retroactive relief and instead required the State to equalize benefits only for contributions to the Arizona Plan made after the Supreme Court's August 1, 1983 decision. *Id.*

1. The class consists of all female employees who are enrolled in the Arizona Plan or will enroll in the plan in the future.

On remand, the district court entered an Amended Order and Judgment. The order requires the State to calculate life-time annuity benefit payments derived from contributions made after August 1, 1983 without regard to the gender of the employee. The order does not require the State to raise the level of benefits paid to women to the level previously paid to men under gender-based annuity tables. Apparently, the State equalized the payments by using a gender-neutral actuarial table. This method raises the women's benefits slightly and lowers the men's benefits slightly. Norris timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

### STANDARD OF REVIEW

We review the scope of the injunctive relief awarded by the district court for an abuse of discretion. *See Hoptowit v. Ray,* 682 F.2d 1237, 1245–46 (9th Cir.1982); *see also Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2374, 45 L.Ed.2d 280 (1975) (Court reviewed award of injunctive relief ordered by district court on remand for abuse of discretion).

### ANALYSIS

In *Norris I,* the Supreme Court held that this court erred in affirming the district court's order granting retroactive relief. 463 U.S. at 1075, 103 S.Ct. at 3494. The Court remanded the case "for further proceedings consistent with [its] opinion." *Id.* Thus, the only issue presently before us is whether the district court abused its discretion on remand in issuing the amended judgment and order. Specifically, Norris contends that the district court's order: (1) is inconsistent with the Supreme Court's decision and thus violates the law of the case doctrine; and (2) violates the Equal Pay Act.

#### I. *Law of the Case*

Norris argues that under the law of the case doctrine, the district court following

the Supreme Court's remand of *Norris I* was required to order the State to raise (or "top up") the level of annuity benefits paid to female employees to equal the level of benefits paid to male employees before the suit.[2] The law of the case doctrine permits a district court on remand to determine only those issues not expressly or impliedly determined by the appellate court. *Donovan v. Burlington Northern, Inc.,* 781 F.2d 680, 684 (9th Cir.1986).

> The law of the case controls unless the first decision is clearly erroneous and would result in manifest injustice, there has been an intervening change in the law, or the evidence on remand is substantially different.

*Waggoner v. Dallaire,* 767 F.2d 589, 593 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986).

The per curiam portion of the Supreme Court's decision in *Norris I* does not expressly address the "topping up" issue. It holds that "all retirement benefits derived from contributions made after [the Court's August 1, 1983 decision] must be calculated without regard to the sex of the beneficiary." 463 U.S. at 1074–75, 103 S.Ct. at 3494. This is the language the district court used in its amended order on remand.

The per curiam opinion, however, is explained by three separate opinions. Justice Marshall wrote for the majority on the liability issue, but only three Justices joined his opinion on the remedy issue. *See id.* at 1075–95, 103 S.Ct. at 3494–3505. Justice Powell dissented on the liability issue but wrote for the majority on the remedy issue. *See id.* at 1095–1107, 103 S.Ct. at 3505–11. Justice O'Connor concurred separately. *See id.* at 1107–11, 103 S.Ct. at 3511–13.

In holding that the district court had abused its discretion in awarding retroactive relief, Justice Powell assumed that the district court's order required topping up.[3]

---

**2.** At oral argument, Norris appeared to limit her request for topping up to the women employed before or at the time of the Supreme Court's decision.

**3.** The original district court order in *Norris I* directed the state to cease using gender-based actuarial tables and to make annuity payments to female employees who have retired "equal to

*Id.* at 1106 n. 11, 103 S.Ct. at 3510 n. 11. He then focused on the disruptive impact a retroactive remedy would have on the solvency of employer-sponsored pension plans,[4] and noted that the cost to employers of equalizing benefits between men and women varies according to three factors:

> (i) whether the plan is a defined-contribution or defined-benefit plan; (ii) whether benefits are to be equalized retroactively or prospectively; and (iii) *whether the insurer may reallocate resources between men and women by applying unisex rates to existing reserves or must top up women's benefits.*

*Id.* (emphasis added).

In applying these factors to this case, Justice Powell expressly stated that the district court's opinion appeared to require employers retroactively to top up women's benefits. *Id.* Norris contends that because the majority chose to eliminate only item (ii)'s retroactivity factor, it implicitly approved of a remedy that would include prospective topping up.

Norris cites *Spirt v. Teachers Insurance and Annuity Association,* 735 F.2d 23, 26–28 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984), in support of her contention that the Supreme Court's decision in *Norris I* implicitly requires topping up.[5] *Spirt,* however, is distinguishable from the instant case because it involved a retroactive, not a prospective remedy. *See id.* The court in *Spirt* only read *Norris I* as requiring that women's benefits be topped up to the level of men's benefits when *retroactive* benefits are ordered in a fixed benefit plan. *See id.* at 27–28. The court explained that any other method of equating benefits retroactively might deprive male employees of vested contract rights to the extent that they have any right to expect a certain level of payments with regard to their pre-August 1, 1983 contributions.[6] *See id.* The distinction between retroactive and prospective remedies is important because whereas the *retroactive* application of a gender-neutral benefit calculation might impair rights to expected benefits, the *prospective* application of such a calculation in a voluntary plan would not.

 In short, *Norris I* did not assume that topping up was necessary in the instant case, and the law of the case doctrine does not require the district court to order the State to top up women's prospective benefits. Moreover, because prospective relief in this case does not impinge on any vested contractual rights, topping up of women's benefits is not necessary to achieve equal benefit payments for all employees. Therefore, the district court did not abuse its discretion in refusing to do so.[7]

---

similarly situated male employees." Without elaboration, we held that the award was proper and did not address the "topping up" issue. *See Norris,* 671 F.2d at 336.

**4.** As Justice Powell explained, "The holding applies to all employer-sponsored pension plans, and the cost of complying with the District Court's award of retroactive relief would range from $817 to $1,260 million annually for the next 15 to 30 years.... There is no justification for this Court, particularly in view of the question left open in *Manhart,* to impose this magnitude of burden retroactively on the public." 463 U.S. at 1106–07, 103 S.Ct. at 3510–11 (citation and footnote omitted).

**5.** *Spirt* involved the validity of gender-based mortality tables in calculating teachers' pension benefits. The case was on remand from the Supreme Court for further consideration in light of *Norris I.* 735 F.2d at 25.

**6.** This interpretation of *Norris I* is supported by the fact that in his dissent, Justice Marshall argued that the Court should remand the retroactive remedy issue because the availability of retroactive relief should turn on whether retired male employees actually have contractual rights to a particular level of benefits that the application of a unisex table would violate. *See* 463 U.S. at 1094–95, 103 S.Ct. at 3504–05.

**7.** In addition, Justice O'Connor, who cast the deciding vote, wrote a separate concurrence in which she held that she "would require employers to ensure that benefits derived from contributions collected after the effective date of our judgment be calculated without regard to the sex of the employee." 463 U.S. at 1111, 103 S.Ct. at 3513. To do so, she would require employers to use longevity tables that reflect the average longevity of all their workers rather than topping up benefits by using male longevity tables for all workers. *Id.* at 1111 n. 4, 103 S.Ct. at 3513 n. 4.

## II. *The Equal Pay Act*

■ Section 3 of the Equal Pay Act of 1963 (the "Act"), 29 U.S.C. § 206(d)(1), reads in pertinent part:

No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.*

29 U.S.C. § 206(d)(1) (emphasis added).

In the instant case, Norris did not make a claim under the Equal Pay Act. She contends, however, that the Bennett Amendment of Title VII, 42 U.S.C. § 2000e-2(h), incorporates into Title VII the proviso of section 206(d)(1) that an employer may not cure a violation by reducing the wage rate of any employee (the "Proviso"). The Bennett Amendment reads in pertinent part:

It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer *if such differentiation is authorized by the provisions of section 206(d) of title 29.*

42 U.S.C. § 2000e-2(h) (emphasis added).

Accordingly, Norris argues that the remedy in the instant case, which does not require the state to equalize prospectively the pension benefits at the men's higher level, violates the Proviso. But the Bennett Amendment incorporates *only* the affirmative defenses of the Equal Pay Act into Title VII.[8] *See County of Washington v. Gunther,* 452 U.S. 161, 168–171, 101 S.Ct. 2242, 2247–2249, 68 L.Ed.2d 751 (1981) (the Bennett Amendment does not incorporate into Title VII the Equal Pay Act's requirement that the plaintiff show "equal work" for an Equal Pay Act claim, because the Bennett Amendment incorporates only the Equal Pay Act's affirmative defenses).

The Proviso, which states that an employer may not cure an Equal Pay Act violation by reducing the wage rate of any employee, is a restriction on an employer's remedy and does not delineate an affirmative defense to an Equal Pay Act claim. Therefore, the Bennett Amendment, which only incorporates the four affirmative defenses of the Equal Pay Act into Title VII, does not also incorporate the Proviso. Consequently, we hold that the Bennett Amendment to Title VII does not require the district court to remedy a Title VII violation by topping up the female employee's benefits in accordance with the Equal Pay Act Proviso.[9]

---

**8.** The four affirmative defenses are: "where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex...." 29 U.S.C. § 206(d)(1).

**9.** Norris cites *Rosen v. Public Service Electric and Gas Co.,* 477 F.2d 90, 96 (3d Cir.1973), a pre-*Manhart* case, for the proposition that when a pension plan violates Title VII, the benefits of the employees being discriminated against must be raised to the level of the other employees. *Rosen,* however, is distinguishable from the in-

stant case because the court ordered a retroactive remedy.

*Rosen* involved a pension plan where male employees who retired early received reduced benefits whereas female employees who retired early received full benefits. *Id.* The company eliminated the difference in 1967. The Third Circuit in *Rosen* awarded damages retroactive to 1965, the effective date of Title VII.

Because the court believed that the higher pension rights of the female employees which had accrued before 1967 could not be diminished, the court held that the male employees' retirement benefits must be raised to the female

Because we held that the Bennett Amendment does not incorporate the Proviso into Title VII, we need not reach the question whether the pension benefits in the instant case are "wages" under the Equal Pay Act.

## CONCLUSION

We affirm the district court's order and hold that neither the Supreme Court's decision in *Norris I* nor the Equal Pay Act Proviso requires the district court to order the state to raise women's benefits for contributions made after August 1, 1983, to the previous level of men's benefits by employing male actuarial tables, instead of gender-neutral tables. Each party will bear its own attorney's fees.

employees' benefit levels. *Id.* In so holding, the court noted that the remedy was not inconsistent with the Equal Pay Act. *Id.* The court, however, did not hold that the Equal Pay Act required it to top up the men's benefits. Ac-

cordingly, the case can be interpreted as holding that retired employee's contractual rights cannot be impaired when ordering a retroactive remedy. Therefore, *Rosen* does not provide support for Norris's position.